No. 23-40556

# In the United States Court of Appeals For the Fifth Circuit

BLAKE J. WATTERSON,

*Plaintiff-Appellant,*

v.

BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES; STEVEN DETTELBACH, in his official capacity as Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives; UNITED STATES DEPARTMENT OF JUSTICE; MERRICK GARLAND, in his official capacity as Attorney General of the United States; and UNITED STATES OF AMERICA,

*Defendants-Appellees.*

On Appeal from the United States District Court
For the Eastern District of Texas

## APPELLANT'S OPPOSITION
## TO MOTION TO DISMISS APPEAL

ROBERT HENNEKE
CHANCE WELDON
AUTUMN HAMIT PATTERSON
CLAYTON WAY CALVIN
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701
Telephone: (512) 472-2700
Facsimile: (512) 472-2728

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF INTERESTED PERSONS

No. 23-40556; *Watterson v. BATFE*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Plaintiff-Appellant and Counsel | Defendants-Appellants and Counsel |
|---|---|
| <ul><li>Blake J. Watterson</li><li>Robert Henneke</li><li>Chance Weldon</li><li>Autumn Hamit Patterson</li><li>Clayton Way Calvin</li><li>Texas Public Policy Foundation</li></ul> | <ul><li>Bureau of Alcohol, Tobacco, Firearms and Explosives</li><li>Steven Dettelbach</li><li>United States Department of Justice</li><li>Merrick Garland</li><li>United States of America</li><li>Faith E. Lowry</li><li>Michael Drezner</li><li>Jody D. Lowenstein</li><li>Taylor Pitz</li><li>Sean R. Janda</li></ul> |

| | <ul><li>Abby C. Wright</li><li>Benjamin R. Lewis</li></ul> |
|---|---|

_/s/Autumn Hamit Patterson_
AUTUMN HAMIT PATTERSON
_Attorney of Record for Plaintiff-
Appellant_

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iv

INTRODUCTION ............................................................................. 1

BACKGROUND .............................................................................. 1

PROCEDURAL HISTORY ................................................................. 4

ARGUMENT ................................................................................. 14

I. Because This Court Has Jurisdiction over the Appeal, It Should Deny the Motion to Dismiss. ............................................... 14

   A.   The District Court Refused Plaintiff's Motion for an Injunction and His Motion to Modify an Injunction. ............... 16

   B.   Plaintiff Has Shown the District Court's Refusal Will Have Serious and Irreparable Consequences. .................................. 21

CONCLUSION .............................................................................. 22

CERTIFICATE OF COMPLIANCE ...................................................... 24

CERTIFICATE OF SERVICE ............................................................. 25

# TABLE OF AUTHORITIES

## Cases

*Abbott v. Perez*, 138 S. Ct. 2305 (2018) .................................................... 18

*Carson v. Am. Brands, Inc.*, 450 U.S. 79 (1981) ................................ 15, 18

*Clarke v. CFTC*, 74 F.4th 627 (5th Cir. 2023) ............................ 15, 19, 21

*General Land Office of State of Texas v. Biden*, No. 22-40110, 2022
U.S. App. LEXIS 21090 (5th Cir. July 29, 2022) ............................ 20

*Marshall v. Hope Garcia Lancarte, Inc.*, 632 F.2d 1196
(5th Cir. Unit A 1980) ........................................................ 18

*McCoy v. La. State Bd. of Educ.*, 332 F.2d 915 (5th Cir. 1964) ............. 17

*Mock v. Garland*, 75 F.4th 563 (5th Cir. 2023) ......................................... 2

*NAACP v. Thompson*, 321 F.2d 199 (5th Cir. 1963) ................................ 20

*Overton v. City of Austin*, 748 F.2d 941 (5th Cir. 1984) ........................... 20

*Roberts v. St. Regis Paper Co.*, 653 F.2d 166
(5th Cir. Unit B Aug. 1981) ............................................................ 18

*Texas v. ATF*, No. 6:23-cv-00013 (S.D. Tex. Mar. 6, 2023) ...................... 9

*Thomas v. Sch. Bd. St. Martin Par.*, 756 F.3d 380
(5th Cir. 2014) ........................................................................ 15, 21

*United States v. 1407 N. Collins St.*, 901 F.3d 268 (5th Cir. 2018) ........ 15

*United States v. Lynd*, 301 F.2d 818 (5th Cir. 1962) .................. 16, 19, 21

## Statutes

5 U.S.C. § 705 ................................................................................. 5

18 U.S.C. § 3571 ............................................................................ 3

18 U.S.C. § 922..................................................................2, 3

26 U.S.C. § 5861.............................................................2, 3, 4

26 U.S.C. § 5871................................................................3, 4

26 U.S.C. § 5872...................................................................3

28 U.S.C. § 1292.........................................................15, 16, 18

Tex. Pen. Code § 46.05..........................................................4

**Other Authorities**

11A Wright & Miller, FED. PRAC. AND PROC. § 2962 (3d ed.)..................15

**Regulations**

*Factoring Criteria for Firearms with Attached "Stabilizing Braces,"*
    88 Fed. Reg. 6,478 (Jan. 31, 2023)............................................2, 3, 4

## INTRODUCTION

Over seven months ago, Plaintiff-Appellant Watterson requested a preliminary injunction. The district court twice granted expedited consideration of Watterson's requested injunctive relief. Yet, despite agreeing that expedited consideration was warranted, and despite Watterson's continuous requests to decide the case and grant relief, the district court has steadfastly refused to grant the requested relief. As a result, Watterson faces ongoing irreparable harm despite his repeated requests for preliminary relief—beginning on February 2, 2023—and diligence before the district court. This Court therefore has jurisdiction over this appeal. Appellate courts have jurisdiction over refusals to issue an order granting or modifying injunctions and over orders that have the practical effect of denying an injunction. This Court must exercise that jurisdiction and deny the motion to dismiss filed by the defendants ("the Department"), so that Watterson can obtain preliminary relief that mitigates his irreparable harm.

## BACKGROUND

Early this year, the Department published a final rule that redefines "rifle" (and thus "short-barreled rifle") to include pistols with stabilizing braces. *See Factoring Criteria for Firearms with Attached*

*"Stabilizing Braces,"* 88 Fed. Reg. 6,478, 6,480, 6,574-75 (Jan. 31, 2023) (the "Rule"). Because the Rule rewrites the federal firearm statutes and departs from the Department's earlier classifications recognizing that pistols with stabilizing braces are not short-barreled rifles, ROA.227-42, the Department expressly overruled the "previous classification letters," Rule, 88 Fed. Reg. at 6,480. Under the Rule, a majority of pistols with stabilizing braces—at least 99% of them—are short-barreled rifles regardless of the earlier agency determinations. *Id.* at 6,479-80; ROA.480; *Mock v. Garland*, 75 F.4th 563, 574 (5th Cir. 2023).

This redefinition matters because, unlike pistols, short-barreled rifles must be registered and are subject to additional restrictions, including on their transportation and transfer. 26 U.S.C. § 5861; 18 U.S.C. § 922(a)(1), (a)(4), (b)(4). To lawfully make and register a short-barreled rifle, a person must file a "Form 1" with ATF, provide fingerprints and photographs, pay a $200 making tax, and obtain a law enforcement certification. ROA.245; 249-55. Possession of an unregistered short-barreled rifle is punishable by 10 years in prison and a $250,000 fine, and there are severe criminal penalties, including imprisonment, for non-compliance with other statutory restrictions on

them. 26 U.S.C. §§ 5681, 5871, 5872; 18 U.S.C. §§ 922(a)(1), (4), (b)(4); 3571.

Accordingly, the Rule effectively declares that millions of Americans unlawfully possess unregistered short-barreled rifles and are guilty of a felony that carry a 10-year sentence. *See* 88 Fed. Reg. at 6,480, 6,482, 6,563, 6,573. The Rule, however, also sets forth an extra-statutory compliance scheme that provides some options that would allow some Americans to comply with the statutory requirements (as modified by the Rule), possess a pistol with a stabilizing brace, and avoid prosecution. *See id.* at 6,480-81, 6,507, 6,549, 6,570-71. For example, a person who possessed an unregistered pistol with an *attached* stabilizing brace on the day the Rule was published could submit a Form 1 within 120 days after the Rule's publication (by May 31st), *id.* at 6,480-81, 6,570, even though there is typically "no mechanism for a possessor to register an unregistered [National Firearm Act] firearm already possessed by the person," ROA.260, 247. For those people, the Rule would waive the $200 tax and deem those persons "in compliance with the statutory requirements between the date on which a person's [Form 1] is filed and

the date" of the Department's registration decision. 88 Fed. Reg. at 6,480-81, 6,571.

Watterson, however, did not fall into that camp and has been—and currently is being—prevented from possessing a pistol with an attached stabilizing brace for self-defense. ROA.202-07. Watterson owns a forearm stabilizing brace that the Department now believes transforms a pistol into a rifle (despite an earlier classification letter to the contrary). ROA.200-06. Watterson wishes to attach it to his pistol so he can more safely exercise self-defense in his home. ROA.199-201, 207. But if he does so, he risks federal prosecution and a 10-year prison sentence for possessing an unregistered short-barreled rifle under the Rule, and would risk state prosecution as well. ROA.201-07; Rule, 88 Fed. Reg. at 6,480-81; 26 U.S.C. §§ 5861, 5871; Tex. Pen. Code § 46.05(a)(1)(C).

## PROCEDURAL HISTORY

Wanting to exercise his Second Amendment rights without fear of prosecution, Watterson immediately challenged the Rule. The day the Rule was published—January 31, 2023—Watterson sued the Department for declaratory and injunctive relief in a detailed complaint. ROA.10-54. Watterson alleged that the Rule violates separation-of-

powers principles in Article I, § 1 of the Constitution and exceeds the Department's statutory authority. ROA.11-12, 45-49. He also alleged that the Rule (and the National Firearms Act and Gun Control Act to the extent the Rule properly interprets them) violates the Second Amendment. ROA.12, 49-51.

Hoping to obtain a final judgment quickly and stop his ongoing irreparable harm, Watterson also filed a motion for summary judgment the day the Rule was published. ROA.100-40. Because Watterson could not file a motion for preliminary relief without conferring with opposing counsel, E.D. Tex. Local Rule CV-7(h), (i), his counsel worked diligently to identify which attorneys would represent the Department, ROA.302-03.

Within two days of the Rule's publication, Watterson fulfilled the meet-and-confer requirement and filed a motion for relief under 5 U.S.C. § 705 or, alternatively for a preliminary injunction ("§ 705 Motion") on February 2nd. ROA.272-96. He also filed an emergency motion for expedited consideration of that motion, explaining that a prompt ruling was necessary for Watterson "to avoid further imminent, irreparable harm." ROA.299-06. Watterson requested a decision by March 2nd.

ROA.303.    The Department opposed the motion for expedited consideration "to the extent it would require them to respond to the § 705 Motion in less than 21 days, but otherwise t[oo]k no position." ROA.306.

The Department then filed a motion for an extension of time to respond to the § 705 motion on February 8th.  ROA.316-20.  Watterson filed an opposition the same day, explaining that Department had more than enough time to respond and that he opposed the motion "to the extent that an extension would delay" the district court's decision on the § 705 Motion and increase Watterson's irreparable harm.  ROA.323-27.

On February 9th, the district court granted the Department's extension motion and partially granted Watterson's motion for expedited consideration.  ROA.369.  The district court extended the Department's time to respond to the § 705 Motion until February 23rd, but expedited the deadlines for the § 705 reply to February 27th (two business days later) and the § 705 sur-reply to March 3rd.  ROA.370.  The district court "set the deadline" for an order on the § 705 Motion "to be March 24, 2023," and promised it would issue an order "on or before" that date.  ROA.370-71.

The Department filed a 45-page response to the § 705 Motion on February 23rd, ROA.400-60, along with a motion requesting that it be allowed to exceed the 15-page limit, ROA.394-98. Watterson opposed the request for a 200% increase in the default number of pages on February 24th, but emphasized that, whatever the district court did, it should not delay the decision date. ROA.464-71.

Watterson then timely filed his § 705 Motion reply, ROA.473-82; the district court granted the Department's 30-page extension motion, ROA.483-84; and the Department filed its § 705 Motion sur-reply on March 3rd, ROA.485-92.[1]

Meanwhile, the parties had agreed to a schedule for briefing on Watterson's summary-judgment motion while waiting for the district court to rule on the § 705 Motion. ECF No. 17. They agreed that the Department's response would be due on March 31st and Watterson's reply would be due April 7th. *Id.* at ¶ 3. The district court confirmed the requested schedule, ordering the Department to respond to the summary-judgment motion by March 31st. ECF No. 28.

---

[1] On March 8th, the Department filed an updated response to the § 705 Motion, which altered "citations and statements regarding historical laws" cited therein. ROA.495. The Department's revisions do nothing to remedy its inability to cite to relevant historical analogues. *See* ROA.478, 745-86.

On March 23rd, the Department filed a motion requesting to extend its deadline to respond to the summary-judgment motion to May 1st and to extend its deadline to answer or otherwise respond to the complaint until after the district court ruled on Watterson's summary-judgment motion.   ROA.622-27.   Watterson filed an opposition the next day. ROA.629-37.  He argued, among other things, that an extension would prejudice him by delaying final resolution of his case and that an extension was unnecessary, especially as the Department had already submitted a 45-page response to his § 705 Motion that was based, in part, on the Department's asserted need to respond to arguments in the summary-judgment motion. ROA.634-35.

On March 24th, the district court's deadline to issue an order on the § 705 Motion elapsed.  On March 27th, counsel for the Department and Watterson jointly called the district court to inquire about when they could expect a ruling on the § 705 Motion and whether the district court planned to rule on the Department's extension motion.  A clerk assured counsel that the district court was aware of the motions and the district court's self-imposed March 24th deadline for a ruling on the § 705 Motion.

In the meantime, plaintiffs in other lawsuits challenging the Rule began seeking preliminary relief weeks after Watterson had. *See, e.g.*, Mot. for Prelim. Inj., *Texas v. ATF*, No. 6:23-cv-00013, ECF No. 16 (S.D. Tex. Mar. 6, 2023); Mot. for Prelim. Inj., *Mock v. Garland*, No. 4:23-cv-00095, ECF No. 36 (N.D. Tex. Feb. 21, 2023). On March 30th, a different district court denied a preliminary injunction in one of those cases, *Mock v. Garland*, and the Department filed a notice of supplemental authority with the district court. ROA.640-41.

On March 31st, the Department missed the deadline to respond to Watterson's summary-judgment motion. ROA.493. Then the Department missed the later deadline—May 1st—that it requested. ROA.625. The district court still did not act. ROA.7.

Before the end of the Rule's compliance period, this Court preliminarily enjoined the enforcement of the Rule against the *Mock* plaintiffs pending appeal of the district court's order in that case on May 23rd. ROA.665-66. Watterson immediately filed a notice of supplemental authority with the district court regarding that preliminary-injunction order and urged the district court to rule on the § 705 Motion as soon as possible. ROA.660-63.

Subsequently, other district courts preliminarily enjoined the Department from enforcing the Rule against the plaintiffs in their cases pending the *Mock* appeal. ROA.708-19. Watterson filed yet another notice of supplemental authority and again urged the Court to grant the § 705 Motion or, at the very least, issue a decision on it. ROA.699-701.

On June 7th, the district court preliminarily enjoined the Department from enforcing the Rule against Watterson pending this Court's decision in *Mock*, relying on this Court's preliminary-injunction order and the reasoning of other district courts. ROA.720-22 ("June 7th Order"). It also ordered briefing on whether this action should be stayed until the Fifth Circuit's decision in *Mock*. ROA.722.

Watterson promptly filed a brief that opposed any stay of this action pending the Fifth Circuit's decision in *Mock* and urged the district court to decide his summary-judgment motion as quickly as possible. ROA.723-43. Watterson explained that the summary-judgment motion was "ripe for resolution" ever since the Department missed its March 31st deadline to respond or, at the very least, since the Department missed its proposed May 1st deadline. ROA.730, 740-41. He additionally argued that he was suffering irreparable harm because the district court had not

granted the relief requested in his § 705 Motion and that deciding this case on the merits "quickly would promote judicial efficiency, conserve resources, and serve the public interest." ROA.728, 735-41. He also again demonstrated that Watterson was likely to succeed on the merits. ROA.731-34, 745-86.

In contrast, the Department asked the district court to stay the proceedings pending the Fifth Circuit's resolution of the *Mock* appeal. ROA.792-801. The district court once again refused to issue a decision. It did not stay this case while the *Mock* decision was pending, nor did it decide the pending motions.

On August 1st, this Court issued its decision in *Mock*, which determined the *Mock* plaintiffs would likely succeed on their argument that the Rule violated the logical-outgrowth requirement. *See Mock*, 75 F.4th at 583-86. The Court extended the preliminary injunction for the *Mock* plaintiffs (along with family members and organizational members) for sixty days, but expressly declined to provide nationwide relief. *Id.* at 587-88.

Watterson immediately filed a notice of supplemental authority with the district court regarding *Mock*. ROA.802-06. He highlighted that

the *Mock* decision "does not provide *any* relief" to him, "renew[ed] his request that the Court grant his § 705 Motion," and urged the district court to decide his "§ 705 Motion and summary-judgment motion as soon as possible to prevent additional irreparable harm." ROA.802-03, 805; *see also* ROA.8 (showing the notice was related to both motions).

Out of an abundance of caution, Watterson also filed a motion to extend the time to appeal the June 7th Order. ROA.869-77. He explained that, to the extent the injunction ended with the issuance of the *Mock* opinion, the June 7th Order was an effective denial of his § 705 Motion and could be appealed. ROA.872. The motion further noted that, in the interests of judicial efficiency, Watterson wanted to avoid an appeal that could prove unnecessary if the district court acted and indicated that Watterson would file a motion to modify the June 7th Order, along with a motion for expedited consideration. ROA.872.

Accordingly, on August 9th, Watterson filed a formal motion to reconsider and modify the injunction in the June 7th Order. ROA.880-95 ("Motion to Modify"). He explained that Watterson needed immediate relief to avoid further irreparable harm, because the district court's limited injunction had either terminated when the *Mock* decision was

issued or would terminate soon with the issuance of the *Mock* mandate. ROA.886-89. He also filed an emergency motion for expedited consideration of that motion (or in the alternative, expedited consideration of his summary-judgment motion) the same day. ROA.898-905.

On August 14th, the district court granted the emergency motion, requested supplemental briefing to be completed by September 5th, and clarified that its injunction would remain in effect until the *Mock* mandate issued. ROA.908-09.

Not wasting any time, Watterson ensured the supplemental briefing was completed early: on August 30. ROA.940-49. Nevertheless, the district court did not rule on the Motion to Modify as the date of the mandate's issuance in *Mock* grew nearer. ROA.8-9.

On September 25th, the *Mock* mandate issued. ROA.1015. Watterson immediately filed a notice of mandate issuance, which informed the district court that the *Mock* mandate had issued, that its injunction had terminated, and that Watterson needed immediate relief. ROA.950-53. The district court, however, refused to grant the requested

preliminary relief, rule on the merits, or even extend the limited injunction.  ROA.8-9.

Therefore, Watterson appealed the district court's refusal to modify the injunction and its effective denial of his § 705 Motion on September 26th.  ROA.1016-20.  He subsequently filed a motion for a stay and preliminary injunction as soon as the appeal was docketed and an appellate case number was assigned.

The Department opposed the motion and filed a motion to dismiss the appeal for lack of jurisdiction on October 10th.  On October 11th, the district court issued an order on the Motion to Modify, concluding that it "no longer has jurisdiction to consider the merits" of the Motion to Modify in light of Watterson's appeal.  *See* ECF No. 53 at 2.  The district court did not state whether it would grant the motion.  *See* Fed. R. App. P. 12.1.

## ARGUMENT

## I.    BECAUSE THIS COURT HAS JURISDICTION OVER THE APPEAL, IT SHOULD DENY THE MOTION TO DISMISS.

The district court issued an order refusing to grant the injunction requested in the § 705 Motion, and it refused to grant Watterson's Motion to Modify.  Because this Court has appellate jurisdiction to review those

refusals under 28 U.S.C. § 1292(a)(1) and well-established case law, it should deny the Department's motion to dismiss for lack of jurisdiction.

Under 28 U.S.C. § 1292(a)(1), appellate courts may review "orders that explicitly grant, continue, modify, refuse, or dissolve injunctions or that refuse to dissolve or modify injunctions, as well as to those that have the practical effect of doing so." *Thomas v. Sch. Bd. St. Martin Par.*, 756 F.3d 380, 384 (5th Cir. 2014). This means the Fifth Circuit "may review a district court's order that, while not explicitly denying a preliminary injunction, 'nonetheless ha[s] the practical effect of doing so' and might cause irreparable harm absent immediate appeal." *Clarke v. CFTC*, 74 F.4th 627, 635 (5th Cir. 2023) (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 83 (1981)); *see United States v. 1407 N. Collins St.*, 901 F.3d 268, 272 (5th Cir. 2018) (collecting cases).

Similarly, a court of appeals may review a district court's refusal to grant or modify an injunction even when there is not a formal order. *See* 11A Wright & Miller, FED. PRAC. AND PROC. § 2962 (3d ed.) ("[W]hen a court declines to make a formal ruling on a motion for a preliminary injunction, but its action has the effect of denying the requested relief, its refusal to issue a specific order will be treated as equivalent to the denial

of a preliminary injunction and will be appealable."); *United States v. Lynd*, 301 F.2d 818, 822 (5th Cir. 1962) (concluding that, even though "the trial judge did not enter a formal order 'refusing' a temporary injunction," his failure "to grant the temporary injunction constituted an 'interlocutory order of the district court … refusing … an injunction'" and was "appealable" (quoting 28 U.S.C. § 1292)).

The Department does not dispute that appellate jurisdiction exists when a district court effectively refuses a preliminary injunction or a motion to modify a preliminary injunction under 28 U.S.C. § 1292. Nor could it. Instead, it argues (at 7-8) that there was no effective refusal in this case and, even if there was one, Watterson failed to make the necessary showing that he would suffer irreparable harm as a result. The Department is wrong on both counts.

## A. The District Court Refused Plaintiff's Motion for an Injunction and His Motion to Modify an Injunction.

The procedural history is detailed in length above. *See supra* pp. 4-14. That history proves the district court refused to give Watterson effective injunctive relief.

*First*, the district court effectively denied Watterson's request for preliminary relief in his § 705 Motion. In that motion, Watterson

16

requested the district court stay the Rule and "enjoin the Department from enforcing the National Firearms Act or the Gun Control Act in accordance with the Rule." ROA.293. The district court did not do so, and refused to grant Watterson any relief for 96 days after the briefing on the § 705 Motion was complete. ROA.6-7, 370-71, 485. Then, on June 7th, the district court issued an order that was styled as granting that motion "in part." ROA.720-21. In reality, all the order did was enjoin the Department from "enforcing the [R]ule against Watterson pending the Fifth Circuit's decision" in *Mock*. ROA.721. Watterson promptly informed the Court the June 7th Order was insufficient to prevent his irreparable harm, ROA.735-36, and when this Court issued the *Mock* decision on August 1st, Watterson expressly "renew[ed] his request that [the district court] grant his § 705 Motion." ROA.803-05.

Because the district court's June 7th Order provided only limited relief that terminated with the issuance of the *Mock* mandate, ROA.720-21, 909, it had the "practical effect" of denying Watterson's request for an injunction when the *Mock* mandate issued on September 25th. *See McCoy v. La. State Bd. of Educ.*, 332 F.2d 915, 917 (5th Cir. 1964) (concluding an order, which required persons to be joined as

indispensable parties, had "the practical effect" of "deny[ing] the preliminary injunction" where harm sought to be avoided would occur in the meantime); *Carson*, 450 U.S. at 83 (holding that an order was "appealable" where it did not refuse an injunction but "nonetheless had the practical effect of doing so"). After all, at that point Watterson had no relief at all, and this Court has made clear that "the appealability of an order under 28 U.S.C. § 1292 depends not on the terminology but on the substantive effect of the order." *Roberts v. St. Regis Paper Co.*, 653 F.2d 166, 169 (5th Cir. Unit B Aug. 1981); *see Abbott v. Perez*, 138 S. Ct. 2305, 2319 (2018) ("[T]he label attached to an order is not dispositive.").

Alternatively, this Court has jurisdiction over the district court's June 7th Order, because it grants an injunction on its face. ROA.721; 28 U.S.C. § 1292(a)(1). Even if June 7th was the triggering date to file a notice of appeal, Watterson filed a timely motion to extend the time to file a notice, *see* ROA.869, Fed. R. App. P. 4(a)(1)(B), providing another basis for this Court's jurisdiction, *see Marshall v. Hope Garcia Lancarte, Inc.*, 632 F.2d 1196, 1197 (5th Cir. Unit A 1980) (concluding the Court could decide an appeal when the district court denied, but "should have

granted the motion for an extension of time in which to file a notice of appeal").

*Second*, the district court refused to modify the limited injunction in the June 7th Order. Watterson explained that the June 7th Order (1) did not adequately protect him from irreparable harm pending resolution of the case on the merits, and (2) would provide no relief when the *Mock* mandate issued. ROA.735-36, 803-05, 871-72, 887-90, 898-903, 944-47. The district court, however, refused to modify the injunction even after Watterson made a more formal request, ROA.880, and even after the *Mock* mandate issued and Watterson reminded it that the injunction had been "terminated, necessitating immediate relief for Watterson," ROA.951. Like the plaintiffs in *Lynd*, Watterson has been "completely frustrated" in his effort to obtain an order from the district court that prevents his irreparable harm. *See* 301 F.2d at 819. And because this purposeful "inaction" effectively denied the Motion to Modify, this Court has jurisdiction. *See Clarke*, 74 F.4th at 633 (treating a district court's "inaction as effectively denying a preliminary injunction" and directing "the district court to enter a preliminary injunction").

The Department's cited cases and misleading suggestion (at 7) that the district court had insufficient time to consider the requested relief do not prove otherwise.  In *Overton v. City of Austin*, the appellant filed a notice of appeal only *ten* days after filing the motion for relief.  748 F.2d 941, 951 (5th Cir. 1984).  And in *NAACP v. Thompson* the appellant filed a notice of appeal a mere *two* days after a district court held a preliminary-injunction hearing and issued an order, which stated the issue "is extremely complicated" and the "matter will be taken under advisement … for study and later decision at the proper time."  321 F.2d 199, 201 (5th Cir. 1963).  *General Land Office of State of Texas v. Biden*, a case about a moot appeal, is even less analogous.  No. 22-40110, 2022 U.S. App. LEXIS 21090 (5th Cir. July 29, 2022) (per curiam).  In that case, plaintiffs appealed a district court order staying the proceedings, and the stay expired while the appeal was still pending.  *See id.* at *2-3.

Here, Watterson (1) filed a notice of appeal seven months and three weeks after first requesting injunctive relief, ROA.272-96, three months after Watterson explained an injunction pending the *Mock* decision was inadequate, ROA.735-36, and 48 days after filing a formal motion to modify the injunction, ROA.880-95; (2) filed motions to expedite

consideration of both motions for injunctive relief, ROA.299-306, 898-905; and (3) repeatedly urged the district court to act because he continued to suffer irreparable harm. *See supra* pp. 9-14. That is much more akin to *Clarke* and *Lynd*. *See Clarke*, 74 F.4th at 635 (noting the Fifth Circuit had jurisdiction when the district court effectively denied a preliminary injunction by refusing to rule on a preliminary-injunction motion for three months "even after the Appellants moved to expedite its consideration"); *Lynd*, 301 F.2d at 820, 822 (holding the Court had jurisdiction where the trial judge failed to grant a temporary injunction "eight months after the suit for injunction was filed").

## B. Plaintiff Has Shown the District Court's Refusal Will Have Serious and Irreparable Consequences.

The district court's effective denial of Watterson's requests for injunctive relief has caused—and continues to cause—Watterson to suffer irreparable harm. This is more than sufficient to give rise to appellate jurisdiction.

For appellate jurisdiction to exist, it is only necessary to show that the district court's effective denial "*might* cause irreparable harm absent immediate appeal." *Clarke*, 74 F.4th at 635 (emphasis added); *see Thomas*, 736 F.3d at 384-85 ("*may* have serious, perhaps irreparable

consequences" (emphasis added)).   Watterson easily satisfies this standard.   He faces serious, ongoing irreparable harm, including the deprivation of his Second Amendment rights.  *See supra* pp. 2-4,  Mot. for a Stay and Preliminary Inj. at 3-4, 21-24, Reply in Support at 11.  What is more, he suffers irreparable harm on a daily basis, making immediate appeal necessary to mitigate it.  *See id.*  This Court therefore has jurisdiction and must exercise it.

## CONCLUSION

For the foregoing reasons, this Court should deny the motion to dismiss.

Dated: October 16, 2023,     Respectfully submitted,

*/s/Autumn Hamit Patterson*
ROBERT HENNEKE
Texas Bar No. 24046058
rhenneke@texaspolicy.com
CHANCE WELDON
cweldon@texaspolicy.com
Texas Bar No. 24076767
AUTUMN HAMIT PATTERSON
    *Lead Counsel*
Texas Bar No. 24092947
apatterson@texaspolicy.com
CLAYTON WAY CALVIN
Texas Bar No. 24132780
ccalvin@texaspolicy.com
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701
Telephone: (512) 472-2700
Facsimile: (512) 472-2728

*Counsel for Plaintiff-Appellant*

23

## CERTIFICATE OF COMPLIANCE

I certify that this document complies with the typeface, type-style, and length requirements in 5th Circuit Rule 27.4 and Federal Rules of Appellate Procedure 27(d)(1)(E), (d)(2)(A) and 32(a)(5), (6) because it is in 14-point Century Schoolbook font and contains 4,216 words, excluding the parts exempted by Federal Rules of Appellate Procedure 32(f).

/s/ *Autumn Hamit Patterson*
Autumn Hamit Patterson

## CERTIFICATE OF SERVICE

I hereby certify that, on October 16, 2023, a copy of the foregoing document was electronically filed and served via CM-ECF on all counsel who are registered CM/ECF users.

*/s/Autumn Hamit Patterson*
Autumn Hamit Patterson